| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------- X<br>ROBERT VUONO, JENNIFER SERRANO,<br>WAYNE HUGGINS, MICHAEL SALZANO,<br>CHRISTOPHER RILEY, ANDREW WIACEK,<br>and DAVID GALBAN,<br><br>                            Plaintiffs,<br><br>                  -against-<br><br>CONSOLIDATED EDISON OF NEW YORK,<br>INC.,<br><br>                            Defendant.<br>-------------------------------------------------------------- X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:<br>DATE FILED: 6/11/2019<br><br>18-CV-1635 (VEC)<br><br>OPINION AND ORDER |

VALERIE CAPRONI, United States District Judge:

       Plaintiffs, current and former employees of Defendant Consolidated Edison of New York, Inc., brought this action under the Americans with Disabilities Act ("ADA"), alleging that Defendant discriminated against them on the basis of disability in violation of 42 U.S.C. § 12112(a) and subjected them to impermissible disability-related inquiries in violation of 42 U.S.C. § 12112(d). *See* Dkt. 47 (Corr. Third Amend. Compl.) ("TAC"). Defendant's motion to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6), *see* Dkts. 48-49, is GRANTED.

## BACKGROUND[1]

      Plaintiffs Robert Vuono, Wayne Huggins, Michael Salzano, Christopher Riley, Andrew Wiacek, and David Galban are current employees of Defendant. *See* Dkt. 47 (TAC) ¶ 4, 6-10. Plaintiff Jennifer Serrano is a former employee, having left Defendant for other employment in January 2017. *Id.* ¶¶ 5, 49.

---

[1]      The Court draws the following factual background from the TAC and accepts Plaintiffs' factual allegations as true. *See, e.g.*, *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

Defendant employs approximately 7,500 people, most of whom are subject to random drug and alcohol testing pursuant to U.S. Department of Transportation regulations ("DOT protocol testing"). Dkt. 47 (TAC) ¶ 13. Employees who test "positive" on a DOT protocol test can be placed in Defendant's "On Call program"; employees in the On Call program are subject to random drug and alcohol testing in addition to DOT protocol testing. *Id.* ¶ 19. Employees placed in the On Call program can be removed from their worksites without advance notice and required to undergo drug or alcohol testing ("On Call tests"). *Id.* ¶ 20.

Defendant subjected each Plaintiff to a series of tests and examinations pursuant to the baseline DOT protocol. Dkt. 47 (TAC) ¶¶ 22, 35-37, 55, 72-73, 82, 99-100, 118. Plaintiffs Vuono, Serrano, Huggins, Salzano, Riley, and Wiacek each tested positive on one of the DOT protocol tests, received follow-up examinations and tests, and were subsequently placed in the On Call program.[2] *Id.* ¶¶ 22-30, 35-46, 55-62, 73-76, 82-91, 99-110. Plaintiff Galban was placed in the On Call program after being arrested for driving while impaired. *Id.* ¶¶ 117-19. After placement in the program, Plaintiffs were subjected to random On Call tests on unspecified occasions. *Id.* ¶ 1; *see also id.* ¶¶ 30, 76, 92. Plaintiffs allege that all of their co-workers and supervisors know of their participation in the On Call program and that Plaintiffs are subjected to stigma and suspicion of ongoing drug and alcohol use, *id.* ¶ 20, even though none of the

---

[2] According to the TAC, an employee tests "positive" under the DOT protocol not only if their blood, urine, breath, or saliva contains more than a certain amount of various drugs (including opioids, marijuana, and valium) or alcohol but also if (a) the employee refuses to provide a test sample; (b) the employee's urine sample is of insufficient volume, adulterated, or of too low a temperature—i.e., "cold"; or (c) the employee provides an insufficient breath or saliva specimen for alcohol testing. *See* Dkt. 47 (TAC) ¶ 15. Plaintiffs Vuono, Serrano, Huggins, and Riley each produced "cold" urine samples (or, at the very least, were each told that he or she had produced a cold sample) before being placed on the On Call program. *See id.* ¶¶ 22, 37, 56, 82. Plaintiff Salzano tested positive for Oxasepam. *Id.* ¶ 73. Plaintiff Wiacek failed to produce a urine sample of sufficient volume, although he appears to dispute whether that failure was intentional or the result of "shy bladder" syndrome. *Id.* ¶¶ 99-109.

Plaintiffs is a substance abuser, *id.* ¶ 128-29, and even though each Plaintiff denies drug or alcohol use when they were placed in the On Call program, *id.* ¶ 11.

Plaintiffs filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on March 14, 2018, and received a Right to Sue letter on or about August 27, 2018. Dkt. 47 (TAC) ¶ 2. Plaintiffs filed this action on February 22, 2018, asserting two claims under the ADA. *Id.* ¶¶ 128-29. Among other relief, Plaintiffs seek a permanent injunction against ADA violations, damages, and declaratory relief. *Id.* at 18-19. Defendant moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkts. 48-49.

## DISCUSSION

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons*, 703 F.3d at 599.

### I. Plaintiffs Fail to State a Claim Under 42 U.S.C. § 12112(a)

Count One alleges that Plaintiffs were discriminated against in violation of 42 U.S.C. § 12112(a). That provision prohibits discrimination against a "qualified individual on the basis of disability" in, among other things, the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). To allege a prima-facie case under Section 12112(a), a plaintiff must allege,

as relevant here, that "plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA" and that "plaintiff suffered an adverse employment action because of his disability or perceived disability."[3] *Capobianco v. N.Y.C.*, 422 F.3d 47, 56 (2d. Cir. 2005); *see also Kinneary v. N.Y.C.*, 601 F.3d 151, 155-56 (2d Cir. 2010) (same). Here, even assuming that Plaintiffs had or were regarded as having an ADA-covered disability, Plaintiffs have not plausibly alleged that they suffered an adverse employment action; accordingly, the TAC fails to plead a prima-facie case of discrimination under Section 12112(a).

To allege an adverse employment action, a plaintiff must allege that he was subjected to an employment action that was "materially adverse" with respect to "the terms and conditions of employment." *Davis*, 804 F.3d 231, 235 (2d Cir. 2015) (citation omitted). "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (internal quotation marks omitted). It must instead have "created a materially significant disadvantage with respect to the terms of [the plaintiff's] employment." *Id.* (internal quotation marks omitted).

While there is no bright-line rule for determining whether a challenged employment action is sufficiently adverse to qualify as an "adverse action," *Davis*, 804 F.3d at 235, drug and alcohol testing by an employer is generally not an adverse action under Section 12112(a). *See, e.g.*, *Buckley v. Consol. Edison Co. of NY, Inc.*, 155 F.3d 150, 153-156 (2d Cir. 1998) (holding that "an employer does not discriminate in violation of the ADA by administering tests for the illegal use of drugs to former substance abusers more frequently than it administers such tests to

---

[3] A plaintiff alleging ADA discrimination must also allege that "the defendant is covered by the ADA" and that the "plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation." *Capobianco*, 422 F.3d at 56. Defendant does not dispute that those elements have been adequately alleged.

those not identified as former substance abusers"); *cf., e.g.*, *Perez v. Metro. Transp. Auth.*, No. 11-CV-8655, 2012 WL 1943943, at *9 (S.D.N.Y. May 29, 2012) (holding that subjecting plaintiff to four drug tests over a year was not sufficiently disruptive to qualify as adverse employment action under analogous Title VII framework).

Before addressing whether the TAC adequately alleges an adverse-action, the Court clarifies the scope of its analysis. In their opposition to the motion to dismiss, Plaintiffs assert that the TAC "makes it clear that Plaintiffs sue not about the initial decision to have them subjected to On Call testing, but about the continued testing, month after month, despite the lack of business necessity (each test giving rise to a new claim vs. the plaintiff)." Dkt. 54 (Mem. in Opp. to MTD) at 2. Although the TAC makes Plaintiffs' adverse-action theory far from "clear,"[4] the Court takes Plaintiffs at their word that they disclaim any adverse-action theory premised on Defendant's decision to place them in the On Call program in the first instance. Plaintiffs' discrimination claim instead turns on whether the drug and alcohol tests to which Plaintiffs were allegedly subjected pursuant to the On Call program—which, Plaintiffs allege, at some point became "excessive," Dkt. 47 (TAC) ¶ 128—qualify as adverse actions.[5]

Requiring an employee to be tested pursuant to the On Call program does not constitute an adverse employment action. The disruption that Plaintiffs experience when they are "pulled from their job assignment, without advance notice, to go to a Con Ed drug testing facility" for

---

[4] Indeed, the TAC ambiguously asserts that Defendant violated Section 12112(a) "by requiring Plaintiffs, who were not substance abusers . . . , to submit to excessive and intrusive medical inquiries, including drug and alcohol tests, through Defendant's On Call testing program, tests which other employees, who were not individuals with disabilities, did not have to undergo." Dkt. 47 (TAC) ¶ 128.

[5] Because all 7,500 Con Ed employees are subject to DOT protocol testing, Dkt. 47 (TAC) ¶ 13, and because Plaintiffs specifically premise their discrimination claim on "medical inquiries . . . through Defendant's On Call testing program" to which "other employees, who were not individuals with disabilities, did not have to undergo," *id.* ¶ 128, the Court can only infer that the "medical inquiries" in question are those that distinguish Plaintiffs from their fellow employees—i.e., drug and alcohol tests pursuant to the On Call program.

On Call testing, Dkt. 47 (TAC) ¶ 20, is not a "materially significant disadvantage with respect to the terms of [Plaintiffs'] employment," *Williams*, 368 F.3d at 128 (internal quotation marks omitted)—it is, rather, a "mere inconvenience," *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019). Plaintiffs, just like most of the other 7,500 Con Ed employees, are required to undergo random drug and alcohol testing pursuant to DOT protocols, Dkt. 47 (TAC) ¶ 13, and the TAC does not allege that Defendant's methods of conducting random On Call tests materially differ from its methods of conducting random DOT protocol tests. The TAC alleges in passing that the drug and alcohol tests to which Plaintiffs were subjected as part of the On Call program were "in addition to those required by Federal Drug Testing regulations." *Id.* ¶ 129. But the TAC is devoid of facts suggesting that additional On Call testing is so frequent and so invasive that Plaintiffs' continued participation in the On Call program is remotely comparable, let alone tantamount, to a demotion, a pay cut, transfer, or other typical adverse employment actions.[6]

Nor does testing pursuant to the On Call program rise to the level of an adverse action because Plaintiffs are embarrassed and believe that their co-workers and supervisors suspect them of engaging in ongoing drug and alcohol use, Dkt. 47 (TAC) ¶ 20; *see also* Dkt. 54 (Mem. in Opp. to MTD) at 26 ("Plaintiffs claim that being 'on call' and periodically summoned away

---

[6] Although it agrees with Defendant that Count One must be dismissed, the Court is not persuaded by Defendant's argument that *Buckley*, 155 F.3d at 154-56, demands that result. *See* Dkt. 55 (Reply in Supp. of MTD) at 7-8. In *Buckley*, the Second Circuit held "that an employer does not discriminate in violation of the ADA by administering tests for the illegal use of drugs to *former substance abusers* more frequently than it administers such tests to those not identified as former substance abusers." 155 F.3d at 156 (emphasis added). The Court's holding relied largely on 42 U.S.C. § 12114(b), which provides that "it shall not be a violation of [the ADA] for a covered entity to . . . administer . . . drug testing[] designed to ensure" that a rehabilitated drug abuser "is no longer engaging in the illegal use of drugs." *See* 155 F.3d at 155-56. Because the plaintiff in *Buckley* was an admitted former drug abuser, *id.* at 151-52, the Court's holding was necessarily limited to increased testing of individuals who were confirmed to be former substance abusers. The Court had no occasion to address whether an employer violates the ADA by subjecting employees merely *suspected* of drug or alcohol *use*—as opposed to employees who are *confirmed* drug or alcohol *abusers*—to increased drug or alcohol testing. And because Section 12114(b) expressly blesses the latter practice but not the former, *Buckley*'s reasoning is not dispositive here.

from work is embarrassing and stigmatizing, and therefore adverse or discriminatory."). "Actions that cause a plaintiff embarrassment or anxiety are insufficient to qualify as an adverse action because such intangible consequences are not materially adverse alterations of employment conditions." *Miksic v. TD Ameritrade Holding Corp.*, No. 12-CV-4446, 2013 WL 1803956, at *3 (S.D.N.Y. Mar. 7, 2013) (internal quotation marks omitted); *see also, e.g.*, *Davis v. City Univ. of N.Y.*, No. 94-CV-7277, 1996 WL 243256, at *8-9 (S.D.N.Y. May 9, 1996) (holding that "such inchoate matters as a plaintiff's embarrassment or anxiety" are insufficient to render an employment action materially adverse); *Young v. N.Y.C. Dep't of Educ.*, No. 09-CV-6621, 2010 WL 2776835, at *9 (S.D.N.Y. July 13, 2010) (same); *cf. Dawson v. N.Y.C.*, No. 09-CV-5348, 2013 WL 4504620, at *10 (S.D.N.Y. Aug. 19, 2013) (noting that "[c]ourts in this circuit have found that reprimands . . . and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation" and collecting cases (internal quotation marks omitted)). Because the TAC does not allege that the stigma Plaintiffs allegedly experienced caused or corresponded with any materially significant disadvantage—such as demotions, job transfers, foreclosure of advancement opportunities or other tangible changes in the conditions of employment— Plaintiffs have not adequately alleged that being sent for drug tests is an adverse action.[7]

---

[7] Plaintiffs' election to cabin their discrimination claim only to drug and alcohol testing pursuant to the On Call program dooms any discrimination theory based on Defendant's alleged suspension of Vuono, Huggins, and Riley without pay: the suspensions occurred before they were placed in the On Call program, *see* Dkt. 47 (TAC) ¶¶ 25-30, 59-62, 83-91, and were not "inquiries . . . through Defendant's On Call testing program," *id.* ¶ 128. Plaintiffs' way of framing their discrimination claim is also fatal to any theory that Defendant's acts of placing Serrano under "no driving" and "no field work" restrictions, *id.* ¶¶ 37, 41-42, 44-46, and of threatening her with termination "unless she could find a full-duty job within six months, which was difficult considering her restrictions," *id.* ¶ 47, were adverse employment actions. Because those alleged actions were not themselves "inquiries," *id.* ¶ 128, they cannot be adverse actions under Plaintiffs' theory. And, in any event, any discrimination claim based on those alleged actions—which all took place before May 18, 2017—is time-barred. *See infra* Pt. II.A.

The Court notes that Defendant is incorrect that Plaintiffs' Section 12112(a) discrimination claim rises or falls with Count Two, Plaintiffs' Section 12112(d) disability-related-inquiries claim, because the employment actions on which Plaintiffs premise their Section 12112(a) claim—tests pursuant to the On Call program—are

Because the TAC fails adequately to allege that Con Edison took an adverse employment action against them, Plaintiffs have not alleged a prima-facie case of ADA discrimination. The Court therefore dismisses Count One. Plaintiffs have had ample opportunity to correct this deficiency (the Corrected Third Amended Complaint is the fourth Complaint Plaintiffs have filed in this case, *see* Dkts. 1, 16, 42, 47), and they have *twice* amended their Complaint in response to Defendant's argument that the Complaint failed plausibly to allege an adverse employment action, *see* Dkt. 40 (Mem. in Supp. of First MTD) at 16-18. Despite multiple attempts, Plaintiffs have been unable to correct this deficiency because the alleged stigma and embarrassment of Plaintiffs' continued participation in the On Call program is insufficient as a matter of law to constitute an adverse employment action. Given this history, the Court finds that leave to amend Count One would be futile; Count One is, therefore, dismissed with prejudice. *See, e.g.*, *United States ex. rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28-29 (2d Cir. 2016) (affirming denial of leave to amend where, before plaintiff filed his Substitute Second Amended Complaint, defendant's first motion to dismiss had made plaintiff "fully aware of the [legal] challenges to his pleading; he . . . received an opportunity to file a second amended complaint; his Substitute Second Amended Complaint failed to cure the [legal] deficiencies" defendant had already asserted; and "[i]n asking for leave to file yet another amended complaint," plaintiff "did not proffer or describe a proposed new pleading to cure the deficiencies").

---

themselves medical examinations or inquiries. *See* Dkt. 55 (Reply in Supp. of MTD) at 1. Although Section 12112(d) prohibits certain medical examinations and inquiries, and although Plaintiffs' second cause of action arises from that provision, Section 12112(a) prohibits acts that discriminate on the basis of disability generally, and acts that discriminate on the basis of disability in violation of Section 12112(a) qualify as "action[s] prohibited under this chapter" within the meaning of Section 12102(3), the provision that defines what it means to "be[] regarded as having [a physical or mental] impairment" under Section 12102(1)(C)'s definition of "disability." In other words, performing prohibited medical examinations and inquiries under Section 12112(d) is discrimination under Section 12112(a), but drug and alcohol tests need not violate Section 12112(d) in order to constitute discrimination under Section 12112(a).

## II. Plaintiffs' Claim Under 42 U.S.C. § 12112(d) Is Time-Barred[8]

"In order to file an action alleging an unlawful employment decision under the ADA, the plaintiff must have filed an action with the [EEOC]," *Walker v. Connetquot Cent. Sch. Dist. of Islip Cent. Offices*, 216 F.3d 1074 (2d Cir. 2000) (summary order), either (a) within "one hundred and eighty days after the alleged unlawful employment practice occurred" or (b) within "three hundred days after the alleged unlawful employment practice occurred" if the plaintiff "initially instituted proceedings with a State or local agency with authority to grant or seek relief" from the unlawful employment decision, such as the New York State Division of Human Rights ("NYSDHR"), 42 U.S.C. § 2000e–5(e)(1); *see also* 42 U.S.C. § 12117(a) (providing that Section 2000e–5(e)(1) governs suits for ADA violations). "This statutory requirement is analogous to a statute of limitations": "only events that occurred during the [180- or] 300-day period prior to filing" the EEOC complaint "are actionable." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996). Although a plaintiff's noncompliance with Section 2000e–5(e)(1)'s timeliness requirements is an affirmative defense, *see Hardaway v. Hartford Pub. Works. Dep't*, 879 F.3d 486, 491 (2d Cir. 2018), it may, like a traditional statute-of-limitations defense, "be raised in a pre-answer motion pursuant to Fed. R. Civ. P. 12(b)(6)," *Santos v. Dist. Council of N.Y.C. & Vicinity Bhd. of United Carpenters*, 619 F.2d 963, 967 n.4 (2d Cir. 1980). Such a motion should be granted if it appears on the face of the complaint that the complaint is untimely. *Id.*

Plaintiffs filed their complaint with the EEOC on March 14, 2018. Dkt. 47 (TAC) ¶ 2. Thus, any claims arising from events that occurred before May 18, 2017, fall outside the 300-day

---

[8] Although violations of Section 12112(d) appear to be a subset of discrimination under Section 12112(a), *see* 42 U.S.C. § 12112(d)(1) ("The prohibition against discrimination as referred to in [42 U.S.C § 12112(a)] shall include medical examinations and inquiries."), courts analyze claims under Section 12112(d) as a distinct cause of action. *See, e.g.*, *Katz v. Adecco USA, Inc.*, 845 F. Supp. 2d 539, 543-51 (S.D.N.Y. 2012).

window and are definitively time-barred. Claims arising from events that occurred between May 18, 2017, and September 15, 2017—the period outside the ordinary 180-day window but within the 300-day window—are also time-barred unless Plaintiffs first raised those claims with a relevant state or local agency. The TAC does not allege, and nothing in the record suggests, that Plaintiffs are entitled to the 300-day window. But because Plaintiffs' claims are time-barred even under the more capacious 300-day limit, for purposes of this motion and in the interest of construing the TAC in the light most favorable to Plaintiffs, the Court will assume that the 300-day window applies so that only claims based on conduct that occurred before May 18, 2017, are time-barred.

A. The TAC Does Not Adequately Allege that Defendant Took any Prohibited Actions on or after May 18, 2017.

Plaintiff Serrano's employment with Defendant ended in January 2017, after which she was no longer in the On Call program. *See* Dkt. 47 (TAC) ¶ 49. Accordingly, Serrano could not have been subject to any discriminatory treatment by Defendant within the 300-day window.

As to Plaintiffs Vuono, Huggins, Salzano, Galban, Riley, and Wiacek, the TAC contains no specific allegations of On Call program testing after May 18, 2017. The TAC's most specific allegations regarding testing pursuant to the On Call program are its mostly copied-and-pasted allegations that "not a single test [of these Plaintiffs] since 2016 has resulted in a positive finding," Dkt. 47 (TAC) ¶¶ 32, 64, 76, 94, 112, 125[9]; its allegations that Plaintiffs Vuono, Huggins, Salzano, Galban, and Wiacek (but not Riley) each remain in the On Call program as of November 2, 2018 (the date the TAC was filed) and are thus still subject to random drug and alcohol testing pursuant to the program, *see id.* ¶¶ 30, 62, 76, 110, 125; and its allegation with

---

[9] The TAC alleges that "[i]n spite of Salzano's negative drug test results [after January 21, 2016], and not a single positive test for alcohol use, he has been required to remain in the On Call program to this date, which requires mandatory and random drug and alcohol testing for a[] period of up to five years." Dkt. 47 (TAC) ¶ 76.

respect to Vuono that "On-Call testing continues to this day," *id.* ¶ 30—i.e., November 2, 2018. Absent a clear, specific statement about the frequency with which these Plaintiffs have been tested or when each was last tested, these allegations are simply too vague plausibly to support an inference that any of them was tested pursuant to the On Call program on or after May 18, 2017.[10]

The TAC makes other cursory references to drug and alcohol tests, but these allegations are also too vague, general, and conclusory to support a reasonable and non-speculative inference that any Plaintiff was tested under the On Call program within the 300-day window. For example, the TAC blanketly alleges that Plaintiffs were "discriminated against by Defendants' . . . medical tests and disability-related inquiries . . . imposed upon them month after month over the last two to three years . . . ." Dkt. 47 (TAC) ¶ 1. But this allegation cannot be taken at face value: Serrano was not even employed by Defendant after January 2017, *id.* ¶ 49, nearly two years before the TAC was filed, and therefore could not have been subjected to On Call testing "over the last two to three years." The fact that the allegation is so obviously incorrect as to Plaintiff Serrano precludes any plausible inference that the allegation must be correct as to the other Plaintiffs.[11]

---

[10] Certain allegations in the TAC give the Court reason to be affirmatively skeptical that any of these Plaintiffs has been tested pursuant to the On Call program on or after that date: Plaintiff Riley was allegedly placed in the program in June 2013, *see id.* ¶ 89-92, and because that placement, according to Plaintiffs, could not by law have lasted more than five years, *see id.* ¶ 19, there is at most an approximately month-long window during which Riley could have been subjected to an On Call test about which he could timely sue in this Court (assuming the-300 day window is applicable). Given the TAC's detailed recitations of the testing and examinations to which Riley was subjected before being placed in the On Call program, *see id.* ¶¶ 82-91, the conspicuous absence of any details regarding tests since June 2013 makes the Court wary of inferring that Riley was, in fact, tested pursuant to the On Call program on or after May 18, 2017.

[11] Because the Court dismisses Count Two on the ground that Plaintiffs have failed plausibly to plead that they were tested within the 300-day window, the Court need not address Defendant's argument that any such tests "were the inevitable consequence of the decision to place them in the program and involved no independent and discrete act of discrimination," Dkt. 49 (Mem. in Supp. of MTD) at 19-20.

B. The TAC Does Not Allege Facts Sufficient to Support a Continuing-Violation Theory.

Because the TAC fails to plead that any specific drug or alcohol tests fell within the 300-day window, Plaintiffs' claims are time-barred unless, as Plaintiffs half-heartedly contend, *see* Dkt. 54 (Mem. in Opp. to MTD) at 27-28, their continued On Call testing is a "continuing violation" warranting an exception to the ADA's time bar. The Court rejects Plaintiffs' continuing-violation theory for a variety of reasons, but only two of them warrant detailed explanation here.

First, "[t]he courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of compelling circumstances." *Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 366 (S.D.N.Y. 2002); *see also Percy v. N.Y. (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 582 (S.D.N.Y. 2017) (same). But Plaintiffs make barely *any* effort to justify their invocation of the doctrine, offering but one flimsy, conclusory sentence in support: "[T]he discriminatory action can be viewed as a 'continuing violation,' allowing a retroactive net to be cast to the date when the testing became unreasonable." Dkt. 54 (Mem. in Opp. to MTD) at 28. Because Plaintiffs fail intelligibly to articulate their continuing-violation theory, the Court will not piece it together for them. The Court is especially unwilling to do so when Plaintiffs devote the previous two paragraphs of their brief arguing that "each test is a unique event, and that each time a plaintiff is tested, a new violation of the ADA occurs," *id.* at 27—a position that, if true, forecloses any continuing-violation theory as a matter of law. *See, e.g.*, *Rivas v. N.Y. State Lottery*, 745 F. App'x 192, 193 (2d Cir. 2018) ("[T]he continuing violation doctrine does not apply to discrete unlawful acts . . . .").[12]

---

[12] Although it need not and does not resolve the issue, the Court tends to agree with Plaintiffs that each On Call test is its own, independently-actionable (*vel non*) occurrence. First, Plaintiffs' claims are unlike a claim for hostile work environment, where individual instances of harassment are not actionable but, in the aggregate, constitute a single, composite violation of the law. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115

Second, setting aside the question whether each test pursuant to the On Call program is part and parcel of a continuing violation, Plaintiffs fail to allege, as they must, that Defendant took any specific actions in furtherance of any ongoing discriminatory policy, *see Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004); *Alleyne v. Am. Airlines, Inc.*, 548 F.3d 219, 222 n.2 (2d Cir. 2008); *see also Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015), or any actions "contributing to" a composite-style claim (like a hostile-work-environment claim), *Morgan*, 536 U.S. at 117, within the 300-day window. As discussed at length above, *see supra* Pt. II.A, the TAC contains no specific factual allegation that the Defendants took any particular action at all, let alone a purportedly unlawful one, between May 18, 2017 and November 2, 2018. This alone defeats Plaintiffs' continuing-violation theory.

For all of these reasons, the Court rejects Plaintiffs' continuing-violation theory and dismisses Count Two as time-barred.[13]

---

(2002). Second, the "timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action," *Van Zant*, 80 F.3d at 713, and Plaintiffs had notice of each purportedly unlawful On Call test when it occurred, *see* Dkt. 47 (TAC) ¶ 19-20. Third, the On Call tests appear to be an extended effect of being placed in the On Call program (another issue which the Court need not definitively resolve, *see supra* n. 11), and the mere fact that a claimant continues to feel the effects of a time-barred discriminatory act does not create a continuing violation. *See Harris v. N.Y.C.*, 186 F.3d 243, 250 (2d Cir. 1999); *Pulte Homes of N.Y. LLC v. Town of Carmel*, 736 F. App'x 291, 293 (2d Cir. 2018). Fourth, Plaintiffs' continued placement in the On Call program itself appears insufficient to give rise to a continuing violation because, as the Second Circuit has made clear, the fact that an employee persists in a status conferred by the employer does not amount to a continuing violation. *See Varno v. Canfield*, 664 F. App'x 63, 65 (2d Cir. 2016) (rejecting continuing-violation theory based on a job demotion, even though a demotion by its nature entails a continuing reduced status). For these reasons, each test would, if unlawful, likely "be actionable on its own," thereby foreclosing Plaintiffs' theory that each is part and parcel of a continuing violation. *See Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 851-52 (2d Cir. 2013) (quoting *Morgan*, 536 U.S. at 115).

[13] Because the Court dismisses Count Two on other grounds, and because Defendant has disclaimed the "business-necessity" defense at this stage, *see* Dkt. 55 (Reply in Supp. of MTD) at 4 n.2, the Court need not address Plaintiffs' lengthy argument that Defendant has not adequately demonstrated its entitlement to that defense, *see* Dkt. 49 (Mem. in Opp. to MTD) at 23-26. The Court expresses frustration, however, that in the three and a half pages of their brief that Plaintiffs devoted to defending their Section 12112(d) claim against dismissal, Plaintiffs failed utterly to address the threshold question whether they have pleaded an unlawful disability-related medical examination or inquiry. *That* question is the horse; the question whether Defendant is entitled to the business-necessity defense is the cart.

C. The Court Grants All Plaintiffs Except Serrano Leave to Amend Count Two.

The Court grants Plaintiffs Vuono, Huggins, Salzano, Riley, Wiacek, and Galban leave to file a Fourth Amended Complaint revised to correct the deficiencies identified above with Count Two. The Court is skeptical that further amendment will be beneficial, but because these Plaintiffs may be able to allege the existence of On Call tests for which they may timely sue in this Court, the Court will grant those Plaintiffs leave to amend Count Two.[14]

---

[14] Although the Court need not and does not resolve here whether Plaintiffs have pleaded an otherwise viable claim under Section 12112(d), because the Court grants Plaintiffs leave to amend Count Two, it notes three issues (two legal, the other factual) with which Plaintiffs will need to contend to adequately plead their claim.

First, by all indications, Plaintiffs have abandoned any theory that the On Call program's drug and alcohol tests are "medical examinations" under Section 12112(d)(4)(A), instead basing their claim on Defendant's requirement that they "submit to excessive and intrusive medical *inquiries* . . . which resulted in Plaintiffs being unnecessarily subjected to drug and alcohol tests." Dkt. 47 (TAC) ¶ 129 (emphasis added). For several reasons, the Court is skeptical that a drug or alcohol test—as opposed to an oral or written question about drug or alcohol usage or addiction—constitutes an "inquiry" under Section 12112(d)(4)(A). First, the EEOC's interpretive guidance (to which the Second Circuit, *see Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 94-95 (2d Cir. 2003), has given great persuasive weight) defines a "disability-related inquiry" as a "question [or series of questions] that is likely to elicit information about a disability," EEOC, *Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA)*, Pt. A.1 (July 27, 2000), *available at* http://www.eeoc.gov/policy/docs/guidance-inquiries.html. A blood-, hair-, urine-or breath-based drug or alcohol test is not normally considered a "question" or "series of questions." Second, interpreting "inquiry" to encompass drug tests would appear to render Section 12114(d)(1)—which excludes "a test to determine the illegal use of drugs" from the definition of "medical examination"—meaningless because the same test Congress intended to allow as a permissible "medical examination" would be disallowed as an unlawful "medical inquiry." Finally, the House Report on H.R. 2273, 101st Cong. (1990), which would eventually become S. 933, 101st Cong. (1990) and be enacted as the ADA, indicates that "inquiries" under Section 12112(d) should be understood as "questions," *see* H.R. Rep. No. 101-485, pt. 2, at 72-73 (1990) (regarding inquiries, "[e]mployers may ask questions which relate to the applicant's ability to perform job-related functions, but may not ask questions in terms of disability"), and refers to "medical examinations" as tests that have "results," such as x-rays, *see id.* at 73, 150.

Second, even if a drug or alcohol test could qualify as an "inquiry" under Section 12112(d)(4)(A), no single drug or alcohol test reveals more than mere use of drugs or alcohol; it does not reveal addiction. Without many more facts, it is not plausible that Defendant's On Call drug or alcohol tests "tend to reveal a disability," *Conroy*, 333 F.3d at 95-96; *Lopez v. Hollisco Owners' Corp.*, 669 F. App'x 590, 591-92 (2d Cir. 2016), tend to reveal "the nature or severity of [a] disability," *see* 42 U.S.C. § 12112(d)(4)(A); *Gajda v. Manhattan & Bronx Surface Transit Operating Auth.*, 396 F.3d 187, 188 (2d Cir. 2005), or "give rise to the perception of" a disability, *Conroy*, 333 F.3d at 96.

Finally, for those Plaintiffs employed in safety-sensitive positions, Section 12114(e) may prove to be an insuperable barrier to prevailing under Section 12112(d). Because Defendant does not marshal any such argument, and because the Court lacks briefing on the topic and has dismissed the Section 12112(d) count as time-barred, the Court refrains from resolving this question but encourages Plaintiffs to consider carefully this issue before filing a Fourth Amended Complaint.

Plaintiff Serrano's claims, however, are dismissed with prejudice. Because Serrano's employment with Defendant ended months before the 300-day period for filing an ADA claim with the EEOC began to run, *see* Dkt. 47 (TAC) ¶ 49, she cannot allege any facts on which a timely claim against Defendant relating to the On Call program can be premised. Granting Serrano leave to amend her claims would, therefore, be futile. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("Leave may be denied for good reason, including futility.").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss [Dkts. 48-49] is GRANTED. Plaintiffs' claims under 42 U.S.C. § 12112(a) (Count One) are dismissed with prejudice. Plaintiffs' claims under 42 U.S.C. § 12112(d) (Count Two) are dismissed without prejudice, except Plaintiff Serrano's claim under that provision, which is dismissed with prejudice.

Regarding the claims that have been dismissed without prejudice, Plaintiffs Vuono, Huggins, Salzano, Riley, Wiacek, and Galban must file any Fourth Amended Complaint, revised to correct the deficiencies identified above, no later than **July 12, 2019**. The FAC must be accompanied by a redline version showing the differences between the TAC and the FAC. If Plaintiffs do not file an FAC by that date, the Court will dismiss this case for failure to prosecute.

If Plaintiffs file an FAC, Defendant must move against or answer the FAC no later than **August 9, 2019**. Plaintiffs' opposition to any motion is due no later than **August 30, 2019**. Defendant's reply in support of its motion, if any, is due no later than **September 6, 2019**.

If Defendant answers the FAC, the parties must appear for an initial pre-trial conference on **August 23, 2019 at 10:00 a.m.** No later than **August 15, 2019**, the parties must submit a

joint pre-conference letter of no more than five pages addressing the following in separate paragraphs:

(1) a brief description of the case, including the factual and legal bases for the claim(s) and defense(s);

(2) the basis for subject-matter jurisdiction;

(3) any contemplated motions; and

(4) the prospect for settlement.

The parties must append to their joint letter a <u>jointly</u> proposed Civil Case Management Plan and Scheduling Order. The parties are directed to consult the undersigned's Individual Practices in Civil Cases, which may be found on the Court's website: http://nysd.uscourts.gov/judge/Caproni

**SO ORDERED.**

**Date: June 10, 2019**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**